Slip Op. 17-52

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CC METALS AND ALLOYS, LLC, AND GLOBE SPECIALTY METALS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 14-00202 |

**OPINION**

[Remand results sustained.]

  William D. Kramer and Martin Schaefermeier, DLA Piper LLP (US), of Washington, DC for Plaintiffs CC Metals and Alloys, LLC and Globe Specialty Metals, Inc.

  Peter A. Gwynne, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC for Defendant United States. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director. Of counsel on the brief was Devin S. Sikes, Senior Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

  Sydney H. Mintzer and Jing Zhang, Mayer Brown LLP, of Washington, DC for Defendant-Intervenors Kuznetsk Ferroalloys OAO, Chelyabinsk Electro-Metallurgical Plant OAO and RFA International LP, Calgary (Kanada) Schaffausen.

Dated: April 28, 2017

  Gordon, Judge: The U.S. Department of Commerce has filed its Final Results of Redetermination ("Remand Results"), ECF No. 61, pursuant to CC Metals and Alloys, LLC v. United States, 40 CIT ___, 145 F. Supp. 3d 1299 (2016) ("CC Metals"). The court in CC Metals sustained most of the issues Plaintiffs raised, but remanded two minor issues for Commerce to address: (1) Commerce's treatment of certain post-sale home

market warehousing expenses and revenue, CC Metals, 40 CIT at ___, 145 F. Supp. 3d at 1308; and (2) Commerce's possible error using a simple, as opposed to a weighted, average in calculating home market imputed credit expenses, id., 40 CIT at ___, 145 F. Supp. 3d at 1311.

The court notes that it erred in remanding these issues to Commerce without first ascertaining whether either issue had a material effect on the less than fair value determinations. As Commerce explains in the Remand Results, neither issue does, and any error was therefore harmless. It was therefore a waste of administrative resources for the court to require a remand in this case. The court below briefly reviews Plaintiffs' challenges to the Remand Results, familiarity with which is presumed.

## Treatment of Home Market Warehousing Expenses And Revenue

Commerce provides a detailed explanation in the Remand Results that its narrative description in the final determination was not consistent with its actual treatment of home market warehousing expenses and revenue in the margin calculation program, and that despite the error in its narrative, it did in fact account for those items lawfully under the statute, as well as under its regulations and practice. Remand Results at 7-13, 16-19. Commerce does identify one immaterial wrinkle: the inability to distinguish on-site and off-site warehousing revenue reported in one field of the margin program. Id. at 11-12. Commerce explains that this issue had no material effect on the margin (and also provides an alternative calculation as further support of the issue's immateriality). Id. Although Plaintiffs note that on-site and off-site warehousing revenue are not separately

distinguished in the margin program, they proffer no alternative calculations that demonstrate a material effect on the margin.[1]

Plaintiffs instead argue that the only way to address the issue of on-site warehousing is for Commerce to adjust for it as a miscellaneous income item, but Plaintiffs fail to provide any authority for this proposed treatment. Instead, they argue that on-site warehousing has to be treated the same as sizing revenue. Commerce, however, reasonably explained in the Remand Results why similar treatment was unwarranted. See Remand Results at 18 ("[W]e treated sizing as an offset to cost because we considered it to be a step in the manufacturing process, rather than a service or expense for finished merchandise.") (citing Issues and Decision Memorandum at 25)). The court therefore sustains Commerce's treatment of warehousing expenses and revenue.

**Imputed Credit Expenses**

In the Remand Results Commerce explained that it "inadvertently applied a simple average of the short-term interest rates, rather than a weighted-average of the short-term interest rates," and Commerce corrected the calculation. Remand Results at 13. Commerce calculates the weighted-average interest rate for credit expenses based on the weighted-average interest rate paid by the respondent for short-term loans in the currency of sale. If "the respondent (the seller) has short-term borrowings in the same

---

[1] Plaintiffs suggest it is possible to ascertain which portion of total reported revenue is related to on-site warehousing and off-site warehousing, respectively, see Pls.' Comments at 4-5 n.3-4, ECF Nos. 65, 66, but for whatever reason plaintiffs chose not to present these figures and argument to Commerce in the first instance during the remand proceeding, and the court must therefore deem these arguments waived. See 28 U.S.C. § 2637(d); Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010).

currency as that of the transaction, [Commerce uses] the respondent's own weighted-average short-term borrowing rate realized in that currency to quantify the credit expenses incurred." Policy Bulletin 98.2: Imputed credit expenses and interest rates, ("Policy Bulletin 98.2") dated February 23, 1998, found at: http://enforcement.trade.gov/policy/bull98-2.htm (last visited on this date). If a respondent has no short-term borrowings in the currency of the transaction, Commerce "will use publicly available information to establish a short-term interest rate applicable to the currency of the transaction." Id. "Irrespective of whether the short term rate is derived from a respondent's actual borrowing experience or from a published source, it is always reflective of all short-term loans with maturities of one year or less." Certain Oil Country Tubular Goods from the Republic of Philippines, 79 Fed. Reg. 41,976 (Dep't Commerce July 18, 2014) (final determ.), Issues and Decision Memorandum at 18 (Comment 3) (emphasis added).

In the final determination Commerce used a "simple" average of short-term rates derived from a small set of Chelyabinsk Electrometallurgical Integrated Plant Joint Stock Company's ("CHEMK") factoring arrangements that Commerce examined at verification. In the investigation Commerce had not specifically requested interest rate data for all of CHEMK's factoring arrangements during the period of investigation ("POI"). At verification Commerce did, however, examine a small set of CHEMK's factoring arrangements. Commerce, in turn, used the rates from those verified transactions to derive the short-term interest rate for imputed credit expense. As noted, Commerce inadvertently applied a simple rather than a weighted-average in the calculation, an error it corrected in the

Case 1:14-cv-00202-LMG   Document 77   Filed 04/28/17   Page 5 of 5

Court No. 14-00202                                                                                           Page 5

<u>Remand Results</u>.

Plaintiffs make a "legal" argument that Commerce's use of the relatively small set of CHEMK's factoring arrangements to derive the weighted-average short term rate violates Commerce's interest rate selection practice because Commerce failed to use <u>all</u> of CHEMK's factoring arrangements during the POI. Plaintiffs instead prefer that Commerce use ruble-denominated rates from published sources that were used in the preliminary determination.

Plaintiffs misunderstand Commerce's practice. As noted above, Commerce attempts to select an interest rate that is "reflective of" all short-term borrowings. In this case CHEMK's complete short-term borrowing data was (for a variety of non-nefarious reasons) not on the record. Properly framed, the issue is simply which of the two proposed rates best reflects CHEMK's short-term borrowing. A reasonable mind could choose a rate derived from CHEMK's verified data as being more reflective of CHEMK's borrowing experience than a rate derived from published rates with no connection to CHEMK. Accordingly, Commerce's short-term borrowing rate selection is sustained.

## Conclusion

For the foregoing reasons, the <u>Remand Results</u> are sustained.  Judgment will enter accordingly.

                                          /s/ Leo M. Gordon
                                         Judge Leo M. Gordon

Dated:   April 28, 2017
         New York, New York